UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
THOMAS GESUALDI; LOUIS
BISIGNANO; ANTHONY PIROZZI;
DOMINICK MARROCCO; ANTHONY
D'AQUILA; FRANK FINKEL; JOSEPH
FERRARA; MARC HERBST; THOMAS
CORBETT; and DENISE RICHARDSON,
as Trustees and Fiduciaries of the Local 282
Int'l Brotherhood of Teamsters Welfare,
Pension, Annuity, Job Training, and
Vacation and Sick Leave Trust Funds,

                                                          **MEMORANDUM & ORDER**
                Plaintiffs,                             11 CV 115 (RJD) (VMS)

       - against -

QUADROZZI EQUIPMENT LEASING
CORP. and AMSTEL RECYCLING &
CONCRETE CORP.,

                          Defendants.
------------------------------------------------------- x
DEARIE, District Judge

       This is the second time the Court has addressed this motion to vacate a default judgment entered against Defendants Quadrozzi Corporation and Amstel Corporation in this employee benefits case. See ECF Nos. 23-25. The Court first denied Defendants' motion to vacate the default judgment in 2013, but Defendants successfully appealed to the Second Circuit, which vacated the Court's order denying the motion and remanded for additional findings. See Gesualdi v. Quadrozzi, 629 F. App'x 111, 113-14 (2d Cir. 2015). On remand, the Court referred the motion to Magistrate Judge Scanlon who, by report and recommendation issued August 3, 2016, recommends that the Court deny Defendants' motion to vacate the default judgment once again. See ECF No. 55 ("R&R"). Defendants object to that recommendation, and responses and

replies have been filed. See ECF Nos. 57, 60, 67, 71. For the following reasons, Defendants' objection is overruled and the motion to vacate default judgment is again denied.

## BACKGROUND

The Court presumes familiarity with the facts and procedural history of this action, which have been set forth comprehensively in Magistrate Judge Scanlon's report and recommendation, and are adopted herein.

## DISCUSSION

When a party objects to a magistrate judge's report and recommendation, the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to" and may "accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." Fed. R. Civ. P. 72(b)(3); see also 28 U.S.C. § 636(b)(1)(C). In ruling on the objection, the Court may rely on the magistrate judge's proposed findings and recommendation to whatever extent it chooses. United States v. Raddatz, 447 U.S. 667, 676 (1980).

Federal Rule of Civil Procedure 60(b)(1) governs motions to vacate a default judgment. Under Rule 60(b)(1), the Court may relieve a party from a judgment based on "mistake, inadvertence, surprise, or excusable neglect." See also Fed. R. Civ. P. 55(c) ("The court may set aside an entry of default judgment for good cause, and it may set aside a final default judgment under Rule 60(b)."). There is a strong preference in favor of resolving cases on the merits, and in ruling on a motion to vacate a default judgment, the Court must resolve all doubts in favor of the moving party. See New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005). The Second Circuit has enumerated three factors the Court must consider in deciding whether to grant a motion to vacate a default judgment: "(1) whether the default was willful, (2) whether the defendant

demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 166-67 (2d Cir. 2004) (citations omitted).

When vacating the Court's earlier order denying Defendants' motion to vacate the default judgment, the Second Circuit instructed the Court to address three issues on remand: (1) the legal sufficiency of Plaintiffs' complaint (a preliminary requirement for granting a default judgment, see City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011); Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)); (2) whether the Defendants have meritorious defenses; and (3) the extent to which vacating the default would prejudice Plaintiffs. See Gesualdi, 629 F. App'x at 113-14. Because Defendants' objections to Magistrate Judge Scanlon's report and recommendation largely track these three issues, the Court will address each in turn.[1]

A. Legal Sufficiency of the Complaint

"'It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint.'" Gesualdi, 629 F. App'x at 113 (internal quotation marks omitted) (quoting Mickalis, 645 F.3d at 137). Thus, in assessing the propriety of a default judgment, the Court must determine whether Plaintiffs' allegations

---

[1] The Second Circuit expressly limited its remand to these three issues, but the parties' objections and responses address two additional issues previously resolved by this Court: the willfulness of Defendants' default and the untimeliness of Defendants' motion to vacate the default judgment. On appeal, the Second Circuit acknowledged the Court's prior findings on these additional issues and left them undisturbed, choosing instead to remand for additional findings on the three issues specified above. See Gesualdi, 629 F. App'x at 113-14. Because the willfulness of Defendants' default and the untimeliness of Defendants' motion to vacate the default judgment were, if not expressly decided by the Second Circuit, at least "'impliedly resolved by the appellate court's mandate,'" the Court need not address them further. See Brown v. City of Syracuse, 673 F.3d 141, 147 (2d Cir. 2012) (quoting Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010)).

establish Defendants' liability as a matter of law. See id.

Plaintiffs, trustees for a union's employee benefits plan, allege that the Defendants are jointly and severally liable under the Employee Retirement Income Security Act of 1974 ("ERISA") for failing to make contributions due to the plan under a collective bargaining agreement. See 29 U.S.C. §§ 1132(g)(2), 1145. The collective bargaining agreement, however, has just two signatories, the union and Quadrozzi; Amstel did not sign the collective bargaining agreement. Amstel may nevertheless be bound to the collective bargaining agreement if: (1) Quadrozzi and Amstel "constitute a 'single employer' and [] the employees of the companies constitute a single appropriate bargaining unit," Brown v. Sandimo Materials, 250 F.3d 120, 128 n.2 (2d Cir. 2001) (citation omitted), or (2) Amstel is an alter ego of Quadrozzi. See id. at n.3. For Amstel to be liable for contributions to the plan (and for a default judgment against Amstel to be appropriate), Plaintiffs' complaint must adequately allege at least one of these two theories.

Although the single employer and alter ego theories have the same effect—binding a non-signatory like Amstel to a collective bargaining agreement—the analysis required for each theory differs.

Two or more companies constitute a "single employer" if they are "'part of a single integrated enterprise,'" and their employees "constitute a single appropriate bargaining unit." Id. at n.2 (quoting Lihli Fashions Corp. v. NLRB, 80 F.3d 743, 747 (2d Cir. 1996) (per curiam)). In assessing whether separate companies are part of a single integrated enterprise, the Court looks to several factors, "none of which is controlling and not all of which need be present:" (1) the interrelation of operations, (2) existence of common management, (3) presence of centralized control of labor functions, and (4) common ownership, as well as family connections, and the common use of facilities and equipment. See id. The analysis of whether the employees

4

constitute a single bargaining unit also depends on several factors, namely whether there is a "community of interest" among employees, as well as "'factors such as bargaining history, operational integration, geographic proximity, common supervision, similarity in job function and degree of employee interchange.'" Id. (citation omitted) (quoting Brown v. Dominic Prisco Transp., Inc., No. CV-95-1121 ADS, 1997 WL 1093463, at *3 (E.D.N.Y. Aug. 16, 1997)).

Unlike the single employer doctrine, the alter ego doctrine focuses on "'the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations.'" Lihli, 80 F.3d at 748 (quoting Truck Drivers, 944 F.2d at 1046). This test is flexible, and the court may "'weigh the circumstances of the individual case,' while recognizing that the following factors are important: 'whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership.'" Ret. Plan of Unite Here Nat'l Ret. Fund v. Kombassan Holding A.S., 629 F.3d 282, 288 (2d Cir. 2010) (quoting Goodman Piping Prods., Inc. v. NLRB, 741 F.2d 10, 11 (2d Cir. 1984)).

Plaintiffs' allegations closely track the factors courts consider when applying the alter ego or single employer theories. See Compl. ¶¶ 42-67. Among other things, Plaintiffs allege (on information and belief) that Amstel and Quadrozzi share common management, office space, ownership, operations, supervision, customers, business purpose, and equipment. See id. ¶¶ 43-45, 47-51, 59. Plaintiffs also contend (on information and belief) that Amstel and Quadrozzi have the same principal and principle place of business. See id. ¶¶ 10-11, 16-17. Finally, Plaintiffs allege (again on information and belief) that Quadrozzi and Amstel have used the same employees to perform similar services for similar customers under similar conditions in the same location, with Amstel employees (among other things) performing work covered by the

5

collective bargaining agreement between Quadrozzi and the union. See id. ¶¶ 52-58, 63-34.

Taking the allegations in Plaintiffs' complaint as true (as the Court must at this stage, see Finkel, 577 F.3d at 84), and discarding mere legal conclusions (see Iqbal, 556 U.S. at 680), the complaint is sufficient to establish Amstel's liability under either the single employer or alter ego theory.[2] Plaintiffs' allegations are sparse, but they are not merely legal conclusions, even if they hew closely to the relevant factors in the single employer and alter ego analysis. See Trs. of Mosaic & Terrazzo Welfare Pension, Annuity, & Vacation Funds v. Cont'l Floors, Inc., No. 13 CV 1739 (ILG) (SMG), 2013 WL 5637492, at *6 (E.D.N.Y. Oct. 15, 2013) (citing Operating Eng'rs Local 101 Pension Fund v. Al Muehlenberger Concrete Constr., Inc., No. 13-2050-JAR-DJW, 2013 WL 5409116, at *6 (D. Kan. Sept. 26, 2013)). Moreover, the fact that these allegations are based on "information and belief" does not render them insufficient. See Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010). Rather, the weight of authority addressing the adequacy of similar alter ego and single employer allegations in the wake of the Supreme Court's decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) and Iqbal, 556 U.S. 662 is clear and supports the Court's conclusion that the Complaint sufficiently alleges Defendants' liability under either theory. See, e.g., Trs. of Laborers Union Local No. 1298 v. A to E, Inc., 64 F. Supp. 3d 435, 440-41 (E.D.N.Y. 2014) (concluding that allegations "closely track[ing] the factors courts consider when applying the alter ego and single employer doctrines" were legally sufficient); Gesualdi v. Baywood Concrete Corp., No. 11 CV 4080

---

[2] Defendants do not object to Magistrate Judge Scanlon's conclusion that the Complaint is sufficient to establish Quadrozzi's liability as a matter of law. Indeed, Defendants' objections contain no arguments whatsoever regarding the sufficiency of the Complaint as to Quadrozzi or the merits of any defenses Quadrozzi may have. Finding no clear error in Magistrate Judge Scanlon's discussion of Quadrozzi's liability and defenses, the Court adopts these portions of Magistrate Judge Scanlon's report without qualification. See R&R at 8-9, 20-25.

(DRH) (AKT), 2014 WL 4659265, at *6 (E.D.N.Y. Sept. 17, 2014) (holding that a proposed amended complaint containing similar allegations sufficiently alleged that two entities were alter egos or a single employer); Gordotzke v. Seafood Ave. Corp., 17 F. Supp. 3d 185, 190-91 (E.D.N.Y. 2014) (determining that similar allegations, "[t]aken as true and based on the relevant factors, . . . state a plausible claim" that the defendant entities were alter egos or constituted a single employer) ; Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Management Corp., Pension & Welfare Funds v. Dykeman Carpentry, Inc., No. 13-CV-1508 (JS) (ARL), 2014 WL 976822, at *4-5 (E.D.N.Y. Mar. 12, 2014) (concluding that a complaint "which closely track[ed] the factors courts consider when applying the single employer and alter ego doctrines" was legally sufficient); see also Cont'l Floors, 2013 WL 5637492, at *6 (collecting further cases).

Defendants argue that the Court should disregard these cases as inconsistent with the Second Circuit's decision in Taizhou Zhongneng Import and Export Co., Ltd. v. Koutsobinas, 509 F. App'x 54 (2d Cir. 2013). Setting aside the fact that summary orders like the one issued in Taizhou are not precedential (and thus not binding), Defendants' reliance on Taizhou is misplaced. The allegations the Second Circuit addressed in Taizhou were "plainly legal conclusions," supported by no factual allegations whatsoever, and failed to make even conclusory allegations as to a necessary element of the plaintiff's cause of action. See id. at 57. As the Court has already explained, in this case Plaintiffs' allegations ("short and plain" as they may be, see Fed. R. Civ. P. 8(a)(2)) are more than mere legal conclusions, and they plausibly allege all the necessary elements of both the single employer and alter ego doctrines.

As a result, the Court agrees with Magistrate Judge Scanlon's report and recommendation: Plaintiffs' Complaint is legally sufficient.

B. Existence of Meritorious Defenses

In ruling on a motion to vacate a default judgment, the Court must also consider whether Defendants have any meritorious defenses to the well-pleaded allegations in Plaintiffs' complaint. See State St. Bank & Tr. Co., 374 F.3d at 166-67. Defendants bear the burden of presenting evidence establishing a complete defense. See Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 187 (2d Cir. 2015) (per curiam) (citing State St. Bank & Tr. Co., 374 F.3d at 167).

This portion of Defendants' objection again focuses on the single employer and alter ego doctrines. As explained earlier, Plaintiffs need only establish the application of one of these two doctrines. In other words, if Amstel and Quadrozzi are a single employer or alter egos of one another, then Amstel is bound to the collective bargaining agreement. Because Defendants' do not have a meritorious defense to Plaintiffs' alter ego allegations, the Court need not analyze Defendants' defenses to Plaintiffs' single employer allegations.

Defendants argue that the alter ego doctrine cannot apply to two entities (like Amstel and Quadrozzi) which existed and operated simultaneously. Although Defendants cite some authorities that arguably support their position, see, e.g., Iowa Express Distributions, Inc. v. NLRB, 739 F.2d 1305, 1312 (8th Cir. 1984), these authorities are inapposite under controlling precedent. "[Defendants'] argument that alter ego status cannot apply where the entities exist simultaneously is . . . incorrect. 'Although the alter ego doctrine is primarily applied in situations involving successor companies, where the successor is merely a disguised continuance of the old employer, it also applies to situations where the companies are parallel companies.' Parallel existence, therefore, is not an impediment to imposing alter ego status." Kombassan,

629 F.3d at 288 (internal citation omitted) (quoting Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp., 139 F.3d 304, 307 (1st Cir. 1998)).

Because the parallel existence and operation of both Quadrozzi and Amstel is no bar to the application of the alter ego doctrine, Defendants have failed to demonstrate the existence of a meritorious defense.

C. Prejudice to Plaintiffs

The third issue on which the Second Circuit remanded this case for additional findings was the "prejudice to [P]laintiffs if the default judgment were vacated."[3] Quadrozzi, 629 F. App'x at 114. In assessing this issue, the Court must address "whether and to what extent[] vacating the default judgment will prejudice the non-defaulting party." Green, 420 F.3d at 110. More than mere delay is required in order to find that the non-defaulting party will prejudiced, but to the degree that delay "'thwart[s] plaintiff's recovery or remedy,'" the Court may find sufficient prejudice. Id. (quoting 10A Charles A. Wright, et al., Fed. Prac. & Proc.: Civ., § 2699, at 169 (3d ed. 1998)).

Plaintiffs argue that their recovery would be thwarted if the Court vacated the default judgment because of Defendants' tenuous financial situation. Although the parties dispute the particulars of Defendants' financial situation and some apparently ongoing proceedings in bankruptcy court, it appears Plaintiffs would be prejudiced in two ways were the Court to grant

---

[3] As Magistrate Judge Scanlon noted, see R&R at 25 n.11, given the Court's prior conclusion that Defendants' default was willful and the absence of any meritorious defense, the Court may, in its discretion, not address the issue of prejudice. See Bricklayers & Allied Craftworkers, 779 F.3d at 187 (noting that a court "need not reach the question of whether the plaintiff would suffer prejudice" if it is "'persuaded that the default was willful and . . . [is] unpersuaded that the defaulting party has a meritorious defense.'") (quoting SEC v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998)). Out of respect for the Second Circuit's mandate and in the interests of completeness, however, the Court addresses this issue as well.

Defendants' motion. First, vacating the default judgment puts Plaintiffs at risk of losing lien priority against Defendants' various creditors (and possibly losing some amount of money they have already recovered in a settlement in bankruptcy court). Second, given the passage of time and apparent dissolution of at least Quadrozzi, "[P]laintiffs reasonably express concern that the individual and corporate defendants may be judgment-proof by the conclusion of this litigation." Lopez v. Traffic Bar & Rest., Inc., 12 Civ. 8111 (JCF), 2015 WL 545190, at *5 (S.D.N.Y. Feb. 9, 2015).

Given the risk of thwarting Plaintiffs' recovery or remedy if the default judgment were vacated, the Court finds Plaintiffs would be prejudiced if the default judgment were vacated.

## CONCLUSION

Having addressed the deficiencies in the Court's prior decision identified by the Second Circuit, and ever mindful of the strong preference for adjudication on the merits, the Court remains convinced that denying Defendants' motion to vacate the default judgment is the appropriate outcome for this case. Accordingly, the Court concurs in Magistrate Judge Scanlon's recommendation: Defendants' objections to the report and recommendation are overruled and the motion to vacate the default judgment is denied. Now, after five years of litigation during which this dispute never advanced past the default judgment stage, this case is at an end. The clerk is directed to close the case.

**SO ORDERED.**

Dated: Brooklyn, New York
December __, 2016

s/ RJD

RAYMOND J. DEARIE
United States District Judge